IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE, COMPANY,** <br> **Plaintiff,** <br><br> v. <br><br> **KELSEA GRIFFITHS and ELECTRIC INSURANCE COMPANY,** <br> **Defendants.** | C.A. No. 20-202 Erie <br><br> District Judge Susan Paradise Baxter |

## MEMORANDUM OPINION

### I.  INTRODUCTION

This action arises from an underlying tort action that was filed in the Court of Common Pleas of Erie County, Pennsylvania ("Erie County Court") by Kelsea Griffiths ("Griffiths") against Andrea Schlaufman ("Schlaufman") to recover damages for injuries Griffiths sustained in an automobile accident that occurred on August 22, 2014. At the time of the accident, Griffiths was a passenger in a vehicle operated by Heather Bendure ("Bendure"). According to Griffiths, the accident was negligently caused by a second vehicle that was operated by Schlaufman, who fled the scene. Griffiths subsequently joined Bendure as an additional defendant in the underlying action.

At the time of the accident, Schlaufman was insured under an automobile insurance policy that provided bodily injury liability ("BI") coverage limits of $100,000.00. Bendure was insured under an automobile insurance policy with Electric that provided BI coverage limits of $50,000.00 and underinsured motorist ("UIM") coverage limits of $50,000.00. Griffiths was

1

insured under two policies of automobile insurance issued by State Farm that provided stacked UIM coverage limits in the total amount of $150,000.00.[1]

Griffiths ultimately agreed to settle her liability claim for a total of $100,000.00, receiving $90,000.00 from Schlaufman's liability insurance carrier and $10,000.00 from Bendure's insurance carrier, Electric. State Farm consented to the settlement on September 27, 2018, and subsequently received a fully executed copy of the settlement Release in which Griffiths declared, in relevant part, that:

> I release and discharge … Andrea Schlaufman and her insurance carrier, … and Heather Bendure and her insurance carrier, Electric Insurance Company … from any and all causes of action … which I now have or may hereafter have ….

(ECF No. 38-24, at p. 1). Griffiths is now seeking to recover UIM benefits from State Farm.

On June 4, 2020, State Farm initiated the present action by filing a complaint for declaratory judgment against Griffiths and Electric in the Erie County Court, seeking a determination that Electric is primarily responsible for providing UIM coverage to Griffiths, and that State Farm is the UIM carrier of second priority and is entitled to a credit of $200,000.00 against any UIM benefits to which Griffiths may be entitled under State Farm's policies [ECF No. 1-1, at ¶¶ 24-25]. The action was subsequently removed to this Court pursuant to a Notice of Removal filed by Electric on July 15, 2020 [ECF No. 1].

The parties have completed discovery and State Farm has filed a motion for summary judgment [ECF No. 35], which is presently pending before the Court. Griffiths has filed a

---

[1] The two State Farm policies under which Griffiths is a named insured were both purchased and maintained by her father, David Griffiths (ECF No. 37, at ¶ 8).

memorandum in opposition to State Farm's motion [ECF No. 40], and State Farm has since filed a reply brief [ECF No. 41].[2] This matter is now ripe for consideration.

## II.     DISCUSSION

State Farm asserts that it is entitled to receive a total credit of $200,000.00 against any UIM coverage benefits to which Griffiths may be entitled under its automobile policies, consisting of the following: (1) a $100,000.00 credit for the BI limits available under Schlaufman's policy; (2) a $50,000.00 credit for the BI limits available under Bendure's policy with Defendant Electric; and (3) a $50,000.00 credit for the UIM limits available under Bendure's policy with Defendant Electric.

In her opposition to State Farm's motion, Griffiths asserts that several issues of material fact remain that preclude the entry of summary judgment (ECF No. 40, pp. 4-5); however, only two of these purported issues are specifically addressed in Griffiths' opposition brief: (1) whether the "non-duplication" provision of the Electric policy applies to the facts of this case; and (2) whether State Farm waived its right to a UIM credit exceeding $110,000.00 when it consented to the terms of Griffiths' settlement of her third party claim. Thus, the Court's consideration of Griffiths' opposition will be limited to these two issues.[3]

---

[2] Defendant Electric has also filed a response to State Farm's motion raising no objection to the relief requested by State Farm "because its proposed Order does not seek any relief against Electric Insurance Company." [ECF No. 39].

[3] The Court finds no need to give undue attention to the remaining "factual issues" enumerated by Griffiths, as such issues are not material to the ultimate determination in this case, for the reasons cited by State Farm in its reply brief [ECF No. 41].

> **A.** **Applicability of Non-Duplication Provision**

Bendure's automobile insurance policy with Electric contains a non-duplication provision in the Liability Coverages section of the policy, which states:

> B.  No one will be entitled to receive duplicate payments for the same elements of loss under this [liability] coverage and:
>
>   1.  Part B or Part C of this policy; or
>
>   2.  Any Underinsured Motorists Coverage provided by this policy.

(ECF No. 37, at ¶ 49). Griffiths points out that the application of this provision would preclude her from recovering both liability and UIM benefits under Bendure's policy with Electric and would, thus, prevent State Farm from obtaining credit for both the liability and UIM limits under the Electric policy. To the contrary, State Farm argues that, under the circumstances of this case, application of the non-duplication provision is invalid and unenforceable as against public policy. Though Griffiths' raises this dispute as a factual issue, the resolution of this issue is a matter of law appropriately determined at the summary judgment stage.

In support of its position that the non-duplication provision is unenforceable, State Farm cites the case of Nationwide Mutual Ins. Co. v. Cosenza, 258 F.3d 197 (3d Cir. 2001), the facts of which are substantially similar to those involved in this case. In Cosenza, a vehicle operated by Angeline Cosenza ("Mrs. Cosenza") and occupied by her husband, William Cosenza ("Mr. Cosenza"), and Patsy Dezii ("Dezii"), was involved in an accident with a second vehicle operated by Angela Nicolucci ("Nicolucci"). All three occupants of the Cosenza vehicle filed suit against Nicolucci, who then joined Mrs. Cosenza as an additional defendant. At the time of the accident, the Cosenza vehicle was insured by a policy of automobile insurance with Nationwide Mutual Insurance Company ("Nationwide"), which carried both liability and UIM benefits.

Pursuant to a settlement, Nicolucci's insurance carrier tendered its available policy limits to the occupants of Cosenza's vehicle and Nationwide contributed an additional amount less than its policy limits under the liability portion of its policy to Mr. Cosenza and Dezii. All three occupants of the Cosenza vehicle then submitted claims for the UIM benefits available under the Nationwide policy. In response, Nationwide filed a declaratory judgment action arguing, *inter alia*, that the UIM claims of Mr. Cosenza and Dezii were precluded by a dual recovery (non-duplication) provision in Nationwide's policy, which provided:

> The insured may recover for bodily injury under the Auto Liability coverage or the Underinsured Motorists coverage of this policy, but not under both coverages.

On cross-motions for summary judgment, the district court upheld the provision and concluded that Mr. Cozensa and Dezii were prohibited from dual recovery. Nationwide Mutual Ins. Co. v. Cosenza, 120 F.Supp.2d 489, 496 (E.D. Pa. 2000). On appeal, however, the Third Circuit overturned the district court's decision, finding that the dual recovery provision was against public policy and unenforceable. Cosenza, 258 F.3d at 207. In particular, the Third Circuit Court held that "enforcement of the dual recovery prohibition in multiple tortfeasor cases such as this one is violative of the MVFRL [Pennsylvania's Motor Vehicle Financial Responsibility Law]." Id. at 214. The Court noted further that "the only construction of the dual recovery prohibition consistent with Pennsylvania case law and the MVFRL, is to limit its enforceability to situations involving single tortfeasors, where invalidating the exclusion would permit the conversion of UIM benefits to liability benefits." Id.

Like Cosenza, the instant case also involves a motor vehicle accident with multiple tortfeasors.[4] Consequently, the holding of Cosenza is directly applicable to this case and renders

Electric's non-duplication provision unenforceable.[5] That being the case, the Court finds that both the BI and UIM policy limits under Bendure's policy with Electric were available to Griffiths at the time she executed the settlement release.

### B.    Effect of State Farm's Consent to Griffiths' Settlement of Third Party Claim

On August 28, 2018, Griffiths' attorney sent a letter to State Farm's claims representative, Kelly Kelly ("Kelly"), requesting State Farm's approval of Griffith's settlement of her third party claim against Schlaufman. This letter contained, *inter alia*, the statement that "[w]e will allow State Farm a credit of $110,000.00 towards the underinsured claim" against State Farm (ECF No. 40-2, at p. 7). This purported credit consisted of the $100,000.00 limits of Schlaufman's liability coverage (of which $90,000.00 was tendered) and the $10,000.00 contributed by Electric toward the settlement. In other words, Griffiths' "allowance" of a total credit of $110,000.00 meant that only $10,000.00 of Electric's total policy limits of $100,000.00 ($50,000.00 BI limits and $50,000.00 UIM limits) was deemed to be credited to State Farm.

Kelly responded by letter, dated September 27, 2018, granting State Farm's permission for Griffiths "to accept the primary tortfeasor's offer of $90,000.00 from [Schlaufman's liability insurance carrier] and $10,000.00 from [Electric] on behalf of [Bendure]" (ECF No. 40-2, at p. 8). Kelly's letter made no mention of the amount of credit State Farm would be claiming against the UIM benefits to which Griffiths might be entitled. Because State Farm did not specifically

---

Griffiths acknowledges as much in her Answer's Second Affirmative Defense, wherein she alleges that Bendure "was minimally negligent in the underlying tort action." (ECF No. 18, at p. 3).

[5] Griffiths attempts to distinguish her circumstances from the defendants in <u>Cosenza</u> are unavailing. It is particularly noteworthy that, like Griffiths, defendant Denzii in <u>Cosenza</u> also had no expectations of recovery from the underinsured portion of the driver's policy with Nationwide; yet, the Court still found that the dual recovery provision in Nationwide's policy was unenforceable and did not preclude Denzii's right to recover both liability and underinsured benefits from the driver's policy, which Denzii had not purchased on her own.

6

claim its right to a UIM credit, Griffiths argues that a factual issue remains as to whether State Farm waived its right to a UIM credit exceeding $110,000.00 when it consented to the terms of Griffiths' settlement of her third party claim. Once again, although Griffiths characterizes this as a "factual issue," resolution of the issue is a matter of law appropriately considered at the summary judgment stage.

For her part, Griffiths has cited no legal support for her position that State Farm was required to specifically claim its entitlement to a credit for the full amount of the policy limits available under the Electric policy at the time it gave its consent to Griffiths' settlement of her third party claim. Griffiths' offer to "allow State Farm a credit of $110,000.00 towards the underinsured claim" was gratuitous at best and did not become set in stone merely because State Farm failed to specify otherwise. Indeed, the UIM credit to which State Farm is entitled is not defined by what Griffiths chooses to "allow"; rather, it is dictated by Pennsylvania law.

The settled law in Pennsylvania governing the amount of BI credit a UIM insurance carrier is entitled to claim when the insured settles her liability claim against the tortfeasor is set forth in Boyle v. Erie Ins. Co., 656 A.2d 941 (Pa. Super. 1995). In Boyle, the Superior Court of Pennsylvania held that when an insured person "settle[s] [her] claim against the tortfeasor's liability carrier for less than the policy limits," the insured's UIM carrier "[is] entitled to compute its payment to its injured insured[] as though the tortfeasor's policy limits had been paid," in effect allowing the carrier to "credit" the full amount of the tortfeasor's coverage toward what it must pay in UIM benefits. Boyle, 656 A.2d at 943. So, the insured "will not be allowed underinsured motorist liability coverage provided by the liability carriers of other drivers involved in the accident." Id. at 943-44. In accordance with Boyle and its progeny, State Farm is,

thus, entitled to receive a credit for the full amount of Electric's BI coverage limits, or $50,000.00, against any claim for UIM benefits Griffiths may have under State Farm's policies.

In addition, an insured's settlement with the primary UIM insurer for less than (or none of) its UIM policy limits operates in the same fashion, meaning that the secondary UIM carrier is entitled to a credit for the full amount of the UIM limits of the primary UIM carrier regardless of the settlement terms. Nationwide Ins. Co. v. Schneider, 906 A.2d 586, 595 (Pa. Super. 2006). In Pennsylvania, the order of priority among UIM insurance carriers is set forth in 75 Pa.C.S.A. §1733(a), as follows:

> (a) **General rule. –** Where multiple policies apply, payment shall be made in the following order of priority:
>
> (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
>
> (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

75 Pa.C.S.A. § 1733(a). Here, there can be no dispute that Electric is the primary UIM insurance carrier because its policy covered the motor vehicle occupied by Griffiths at the time of the underlying accident. Thus, as the secondary UIM carrier, State Farm is entitled to receive credit for the full UIM policy limits available under the Electric policy, or $50,000.00, against any claim for UIM benefits Griffiths may have under State Farm's policies.

### III. CONCLUSION

Because Electric's non-duplication provision is unenforceable as against public policy, both the BI and UIM limits under Electric's policy were available to Griffiths at the time she signed the settlement release. As previously noted, these limits are $ 50,000.00 for BI coverage and $ 50,000.00 for UIM coverage. Under Pennsylvania law, State Farm is entitled to a credit in

the full amount of these policy limits, or $100,000.00, against any UIM benefits to which Griffiths may be entitled under State Farm's policies. This amount is in addition to the $100,000.00 credit State Farm is entitled to receive for the BI limits that were available to Griffiths under Schlaufman's policy. State Farm's summary judgment motion will be granted, accordingly.

      An appropriate Order follows.